UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CORNEATIA S. HILL, <br><br> Plaintiff, <br><br> v. <br><br> SMITH'S LAYTON DISTRIBUTION, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER ADOPTING REPORT AND RECOMMENDATION** <br><br> Case No. 1:24-cv-00201-RJS-DBP <br><br> District Judge Robert J. Shelby <br><br> Magistrate Judge Dustin B. Pead |

Before the court is Plaintiff Corneatia S. Hill's Objection[1] to Magistrate Judge Dustin B. Pead's Report and Recommendation[2] recommending the Defendant Smith's Layton Distribution's Motion for Summary Judgment be granted.[3] For the reasons stated below, the Objection is overruled, the Report and Recommendation is ADOPTED in its entirety, and the court GRANTS summary judgment on all claims.

## FACTUAL BACKGROUND[4]

The case arises out of an allegedly wrongful termination. Hill—who is African American—is a former employee of Defendant Spherion Staffing, LLC (Spherion), where she worked as a production and manufacturing associate beginning May 26, 2023.[5] Spherion is a

---

[1] Dkt. 43, *Plaintiff's Opposition to Defendant Smith's Layton Distribution Motion for Summary Judgment* (*Objection*).

[2] Dkt. 42, *Report and Recommendation* (*R&R*).

[3] Dkt. 36, *Defendant Smith's Layton Distribution's Motion for Summary Judgment* (*Motion*).

[4] Because Judge Pead's Report and Recommendation concerns a motion for summary judgment, the facts are drawn from the record, including deposition testimony attached to the Motion. *See generally* Fed. R. Civ. P. 56(c). On motions for summary judgment, the court "must construe the facts in a way most favorable to the nonmovant." *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

[5] Dkt. 36-1, *Exhibit A* (*Hill Depo.*) at 12:7–15; *Motion* ¶ 1 (citing Dkt. 9, *Amended Complaint for Employment Discrimination* not disputing Hill being African American).

staffing agency that hires and assigns temporary workers to client companies.[6]  Spherion placed

Hill to work at Smith's Layton campus.[7]  Hill was later hired directly by Smith's on August 8,

2023.[8]  On that day, Hill did not have a physical copy of her driver's license and could not

provide Smith's with an acceptable I-9 form.[9]  At Smith's instruction, Hill obtained a temporary

paper license.[10]  Smith's allowed Hill to begin work and required her to provide a permanent

driver's license by November 6, 2023.[11]

Months earlier, about May 30, 2023, another Spherion employee named Kristen Trujillo

asked Hill to smoke marijuana with her while at the Smith's Layton campus.[12]  After Hill

declined, Trujillo stated "come on, all black people smoke marijuana, have access to it or are

willing to share it."[13]  Hill reported the comment to both companies.[14]

Also around May 30, 2023, Hill began to be stalked by a Smith's onboarding trainer

named Sam.[15]  Sam would follow Hill to and from work, to her son's daycare, and throughout

the Smith's Layton campus.[16]  Another Smith's employee, a safety manager named Amber, also

stalked Hill on the Smith's Layton campus.[17]  Hill later testified Amber's purpose in stalking

was two-fold: half of it was motivated by her job responsibilities, which "had nothing to do with

---

[6] *Id.* at 9:22–10:4.

[7] *Id.* at 10:5–23.

[8] *Id.* at 10:5–16, 11:9–12.

[9] *Id.* at 81:1–25.

[10] *Id.* at 82:18–83:9.

[11] *Id.* at 81:20–83:16; Dkt. 36-1, *Exhibit B* (*Declaration of Tiffany Villa*) ¶¶ 4–5; Dkt. 36-1, *Exhibit B* (*Villa-Hill Emails)* at 40.

[12] *Hill Depo.* at 25:13–25, 26:22–25.

[13] *Id.* at 26:8–12.

[14] *Id.* at 28:19–24, 29:22–30:3.

[15] *Id.* at 20:3–18.  Hill testified she did not know Sam's surname.

[16] *Id.* at 19:21–20:18, 32:2–9.

[17] *Id.* at 43:12–25.

the color of [Hill's] skin or being African American," and half was "racially motivated to make sure that I was not going to do what happened with the other African American."[18] The latter statement referred to a prior African American employee at Smith's who Hill said brandished a knife at another employee.[19] Hill also testified she believed Smith's employees "were a little leery of African American people on campus due to the problem they had with" the previous African American employee.[20] The alleged stalking did not have an impact on Hill's job position or pay.[21]

On November 6, 2023, the day Hill was required to submit her physical driver's license to Smith's, Hill instead submitted another temporary license.[22] Tiffany Villa, the Smith's Human Resources Manager, informed Hill that she "must bring in the license for verification in 2–3 weeks."[23] Hill stated in her deposition that another employee—whose name she could not recall—told her that Smith's allowed her seven weeks to receive her physical driver's license.[24]

On November 8, 2023, Hill submitted a verbal complaint of race-based discrimination, stalking, and isolation to the Smith's site manager, Matt Leonhardt.[25] Hill, Leonhardt, Sam and Amber subsequently met to amicably discuss the issues.[26] Hill also met with Smith's human resources personnel to follow up on the complaints.[27] After the meetings, Hill stated she began being "isolated at work," in that she "couldn't work in certain departments with certain

---

[18] *Id.* at 45:4–46:23.

[19] *Id.* at 39:19–41:23.

[20] *Id.* at 41:8–13.

[21] *Id.* at 34:3–37:2.

[22] *Villa-Hill Emails* at 38–39.

[23] *Id.*

[24] *Hill Depo.* at 86:13–87:25.

[25] *Id.* at 69:24–71:7.

[26] *Id.* 31:12–32:24.

[27] *Id.* at 30:11–14, 75:5–13.

employees" and had her lunch breaks not align with others.[28]  Additionally, while Smith's did not generally limit her opportunity to work overtime, it prohibited her from overtime in certain departments.[29]  For example, she was denied four overtime shift requests for other departments in the period after her report.[30]

On November 29, 2023, Smith's inquired with Hill again about submitting her physical driver's license.[31]  When Hill did not produce the license, Villa informed her that her failure to provide the requested identity verification "has placed [Smith's] out of compliance with the United States Department of Homeland Security," and it was "not at liberty to continue employment due to this."[32]  Smith's terminated Hill's employment.[33]

## PROCEDURAL HISTORY

On December 9, 2024, Hill filed the Complaint against Smith's and Spherion alleging employment discrimination and retaliation under Title XII of the Civil Rights Act of 1964.[34] Hill filed an Amended Complaint on February 21, 2025.[35]  On September 25, 2025, the court entered a scheduling order establishing a deadline to serve written discovery requests by January 5, 2026, and a deadline for fact discovery to close on February 2, 2026.[36]  On November 14, 2025, the court dismissed the claims against Spherion.[37]  On February 23, 2026, three weeks

---

[28] *Id.* at 50:19–52:2.

[29] *Id.* 64:24–65:11; 67:24–68:9.

[30] *Id.* 67:24–68:9.

[31] *Villa-Smith Emails* at 40.

[32] *Id.* at 38–39.

[33] *Id.*

[34] Dkt. 1, *Complaint for Employment Discrimination*.

[35] *Amended Complaint for Employment Discrimination*.

[36] Dkt. 30, *Scheduling Order* at 4–5.

[37] Dkt. 34, *Order Adopting Report & Recommendation*.

after the close of fact discovery, Hill filed a motion to extend the fact discovery deadline.[38]  The

court subsequently denied the motion for lack of good cause, as Hill had failed to serve

discovery requests within the allocated time period.[39]

On March 6, 2026, Smith's filed the Motion seeking summary judgment on both

claims.[40]  Hill filed a timely response opposing the Motion.[41]  On May 7, 2026, Judge Pead

issued a Report and Recommendation (Report) recommending the court grant Smith's Motion.[42]

On May 21, 2026, Hill timely filed the Objection to the Report and Recommendation.[43]

## LEGAL STANDARDS

Hill proceeds pro se.  While the court "liberally construe[s] pro se pleadings," "pro se

status does not excuse the obligation of any litigant to comply with the fundamental requirements

of the Federal Rules of Civil . . . Procedure."[44]

The applicable standard of review in considering objections to a magistrate judge's

report and recommendation depends on whether a party lodges an objection to it.[45]  When

assessing unobjected-to portions of a report and recommendation, the Supreme Court has

---

[38] Dkt. 35, *Motion to Extend Fact of Discovery Deadline*.

[39] Dkt. 41, *Order Denying Motion to Extend Fact Discovery Deadline* at 3–4.

[40] *Motion*.

[41] Dkt. 38, *Response to Defendant's Motion for Summary Judgment*; *see also* Dkt. 40, *Reply in Support of Defendant Smith's Layton Distribution's Motion for Summary Judgment*.

[42] *R&R*.

[43] *Objection*.

[44] *Ogden v. San Juan Cty.,* 32 F.3d 452, 455 (10th Cir. 1994) (citation omitted).

[45] *See* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

suggested no further review by the district court is required, but neither is it precluded.[46] This court generally reviews unobjected-to portions of a report and recommendation for clear error.[47]

Federal Rule of Civil Procedure 72(b)(2) allows parties to file "specific written objections to the proposed findings and recommendations."[48] In those instances, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."[49] To qualify as a proper objection that triggers de novo review, the objection must be both timely—that is, made within fourteen days—and "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute."[50] Objections that are untimely, indecipherable, or overly general are reviewed for clear error.[51]

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[52] A dispute is genuine "if the

---

[46] *See Thomas v. Arn*, 474 U.S. 140, 149 (1985) ("The [Federal Magistrate's Act] does not on its face require any review at all, by either the district court or the court of appeals, of any issue that is not the subject of an objection."); *id.* at 153–54 (noting that "it is the district court, not the court of appeals, that must exercise supervision over the magistrate," so that "while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard").

[47] *See, e.g.*, *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made [to a magistrate judge's report and recommendation], the district court judge reviews those unobjected portions for clear error.") (citations omitted); *see also* Fed. R. Civ. P. 72(b) Advisory Committee's note to 1983 amendment ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") (citing *Campbell v. U.S. Dist. Court for N. Dist. of Cal.*, 501 F.2d 196, 206 (9th Cir. 1974), *cert. denied*, 419 U.S. 879).

[48] Fed R. Civ. P. 72(b).

[49] *Id.* 72(b)(3); *see also Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("De novo review is statutorily and constitutionally required when written objections to a magistrate's report are timely filed with the district court." (citations omitted)).

[50] *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996) ("[W]e hold that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review.").

[51] *See id.* ("Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review." (citation omitted)); *see also Moore v. Astrue*, 491 Fed. App'x 921, 922 (10th Cir. 2012) (upholding district court's clear error review of magistrate judge's report and recommendation because Plaintiffs objected only "generally to every finding" in the report).

[52] Fed. R. Civ. P. 56(a).

6

evidence is such that a reasonable jury could return a verdict for the nonmoving party."[53]  A fact

is material if, under the governing substantive law, it could "affect the outcome of the suit."[54]

At summary judgment, the court does not  "weigh the evidence and determine the truth of the

matter" but "determine[s] whether there is a genuine issue for trial."[55]  When applying this

standard, the court "view[s] the evidence and make[s] all reasonable inferences in the light most

favorable to the nonmoving party."[56]  "However, unsupported conclusory allegations do not

create a genuine issue of fact."[57]  To defeat a motion for summary judgment, an opposing party's

evidence "must be based on more than mere speculation, conjecture, or surmise."[58]

When a party who will bear the burden of proof at trial "fails to make a showing

sufficient to establish the existence of an element essential to that party's case[,] . . . there can be

'no genuine issue as to any material fact,' since a complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts immaterial."[59]

Therefore, the movant who will not bear the burden of persuasion at trial may "make its prima

facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on

an essential element of the nonmovant's claim."[60]

---

[53] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[54] *Id.* at 248; *see also United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) ("The substantive law of the case determines which facts are material." (citation omitted)).

[55] *Liberty Lobby*, 477 U.S.  at 249.

[56] *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008) (citation omitted).

[57] *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011) (citation modified).

[58] *Bones v. Honeywell Int'l., Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citation omitted).

[59] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[60] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

## ANALYSIS

Hill levies four objections against the Report: (1) genuine issues of material fact exist, (2) Smith's asserted reason for termination may be pretextual, (3) discovery remains incomplete, and (4) credibility determinations remain for the jury.[61] The court considers each objection in turn and finds all four of them are unsupported by the facts and the law.

## I.      Elements Establishing Discrimination and Retaliation

Before examining each of Hill's objections, the court first lays out the required elements a plaintiff must establish to prevail on claims for discrimination and retaliation.

### A. Title VII Discrimination Claim

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[62] When a plaintiff attempts to establish her employment discrimination claim through circumstantial evidence, the court applies the *McDonnell Douglas* burden-shifting framework, which involves three steps.[63] First, the plaintiff must establish a prima facie case for employment discrimination by showing "[i] that she is a member of a protected class, [ii] she suffered an adverse employment action, and [iii] the challenged action occurred under circumstances giving rise to an inference of discrimination."[64] Second, if the plaintiff makes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions."[65] And third, the "the burden

---

[61] *Objection* at 10–12.

[62] 42 U.S.C. § 2000e-2(a)(1).

[63] *Bennett v. Windstream Commc'n, Inc., 792 F.3d 1261, 1266 (10th Cir. 2015)*; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[64] *Bennett*, 792 F.3d at 1266.

[65] *Id.*

of production shifts again to the plaintiff to show that the defendant's explanation was merely pretextual."[66]

### B.  Title VII Retaliation Claim

Title VII prohibits an employer from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful" by the statute.[67]  Retaliation claims are also reviewed under the *McDonnell Douglas* framework.[68]  "To establish a prima facie case for retaliation, a plaintiff must demonstrate (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[69]  The burden then shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for discharge[,]" before shifting back to the plaintiff to show that the proffered reasons are pretextual.[70]

### C.  The Report

Using the *McDonnel Douglas* framework, the Report found Hill did not satisfy the first phase of establishing a prima facie case for either her discrimination or retaliation claims.  Hill did not establish a prima facie case for discrimination because (1) Trujillo's single statement about marijuana does not demonstrate a hostile work environment; (2) Hill does not show the alleged stalking and isolation were either racially motivated or constituted an adverse employment action; and (3) the limitations on which department Hill could work overtime was

---

[66] *Id.*

[67] 42 U.S.C. § 12203(a).

[68] *Argo v. Blue Cross & Blue Shield of Kans., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).

[69] *Id.*

[70] *Id.* at 1202–03.

9

not an adverse employment action, nor was there evidence presented showing it was racially motivated.[71]  The Report also concluded Hill did not establish a prima facie case for the retaliation claim because (1) the only material adverse employment action she experienced was her termination, and (2) Hill does not establish her termination was racially motivated as "the motion of her termination was put in place on November 6, 2023–two days before, Plaintiff made her verbal complaint of racial discrimination . . . ."[72]

## II.    Genuine Issues of Material Fact

The court now turns to Hill's first objection that genuine issues of material fact remained in regard to her claims.  Hill asserts material facts remain in dispute including "[w]hether the Plaintiff was subjected to unequal treatment; [w]hether actions directed toward the Plaintiff created a hostile or discriminatory work environment; [w]hether the Plaintiff experienced retaliation after complaints or protected activity; [w]hether the Defendant's stated reasons for employment actions were pretextual; [w]hether similarly situated employees received different treatment."[73]

While Hill may state she disputes these issues, the evidence does not show there is a genuine dispute of material fact to warrant a trial on these issues.  A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[74]  None of the issues Hill lists meet this standard.  The Objection fails to cite specific evidence to support the assertion that genuine disputes remain for these factual issues.[75]  The only evidence

---

[71] *R&R* at 16-21.

[72] *Id.* at 21–26.

[73] *Objection* at 11.

[74] *Anderson.*, 477 U.S. at 248.

[75] *See Objection.*

the court sees as possibly indicating a racially hostile work environment is the single statement by Trujillo to Hill regarding African Americans smoking marijuana.[76]  To establish a racially hostile work environment, the Tenth Circuit requires more than "sporadic racial slurs, there must be a steady barrage of opprobrious racial comments."[77]  Trujillo's single offensive statement therefore does not on its own establish a hostile work environment at Smith's.  Similarly, no evidence shows that Hill experienced retaliation after making her complaints, as she was explicitly told two days earlier that she must submit her physical driver's license within the following two to three weeks to remain employed.[78]  Nor is there any evidence indicating the stated reason of termination was pretextual.  Lastly, though Hill asserts that similarly situated employees received different treatment, there is no evidence before the court which would be admissible at trial to show such a pattern.  Hill stated in her deposition that an unnamed coworker informed her she received seven weeks from her initial hiring to obtain a physical license.[79]  This statement is hearsay evidence not falling under any exception and therefore inadmissible at trial.[80]  Because no evidence shows a genuine dispute of material fact, the court rejects Hill's objection.

### III.      Reason for Termination may be Pretextual

The court next considers Hill's second objection that Smith's reason for termination may be pretextual.[81]  A showing of pretext would only be relevant should Hill establish a prima facie

---

[76] *Hill Depo.* 26:8–12.

[77] *See Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994).

[78] *Villa-Hill Emails* at 38–39.

[79] *Hill Depo.* at 86:13–87:25.

[80] *See* Fed. R. Evid. 802; *see also* Fed. R. Civ. P. 56(c)(2) (requiring evidence proffered at the summary judgment stage be capable of being "presented in a form that would be admissible in evidence" at trial).

[81] *Objection* at 11.

case for discrimination or retaliation, which the Report found she failed to do.[82]   Nonetheless, the court will still address the pretext issue here.   Hill argues that evidence of pretext may be established through inconsistent explanations; timing of adverse actions; differential treatment; departures from ordinary procedures; [and] evidence suggesting discriminatory motive."[83]   The court disagrees.   Hill does not cite any evidence to argue pretext.   The only asserted reason which has any support in the evidence is the proximate timing of the termination to her November 8 complaint.[84]   However, considering Smith's explicitly informed Hill two days prior to the complaint that she must submit her physical license within two to three weeks (which she undisputedly failed to do), a reasonable jury could not find the proffered reason for termination to be pretextual solely on account of timing.   Accordingly, the court rejects this objection.

## IV.      Discovery Remains Incomplete

The court next considers Hill's objection that summary judgment is inappropriate now because discovery is incomplete.[85]   The court previously denied Hill's Motion to Extend Discovery.[86]   Fact discovery closed on February 2, 2026.[87]   Hill's failure to conduct discovery in the time allocated does not necessitate the court delay awarding summary judgment.   Because discovery is closed, the court rejects her objection on this ground.

## V.      Witness Credibility Determination

---

[82] *See McDonnell Douglas*, 411 U.S. at 802.

[83] *Id.*

[84] *Objection* at 11.

[85] *Id.* at 11–12.

[86] *Order Denying Motion to Extend Fact Discovery.*

[87] *Scheduling Order.*

Lastly, the court considers Hill's objection that witness credibility determination is reserved for the jury and therefore precludes summary judgment here.[88]  Hill asserts "summary judgment is an extraordinary remedy" that is "inappropriate where competing versions of events exist," as a jury should "determine witness credibility and decide disputed factual issues."[89]  Hill is mistaken.

As the Supreme Court explains, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action."[90]  Summary Judgment is therefore appropriate "if no trial is necessary."[91]  That is the case here where Hill has failed to meet her burden of showing a genuine dispute of material fact exists.  Therefore, no jury is needed to determine witness credibility issues.  The court rejects Hill's fourth objection accordingly.

## VI.    The Report and Recommendation is Adopted

Finding no clear error in the remainder of the Report, the court adopts it in its entirety.

### CONCLUSION

For the reasons stated above, Hill's Objection[92] is OVERRULED, the Report and Recommendation[93] is ADOPTED in its entirety, and Smith's Motion[94] is GRANTED.  The court

---

[88] *Objection* at 12.

[89] *Id.* at 1, 12.

[90] *Celotex*, 477 U.S. at 327 (citation omitted).

[91] *Johnson v. Liberty Mut. Fire Ins. Co.*, 653 F. Supp. 2d 1133, 1137 (D. Colo. 2009) (citing *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995)).

[92] Dkt. 43.

[93] Dkt. 42.

[94] Dkt. 36.

awards summary judgment in favor of Smith's on all claims. The Clerk of Court is directed to close the case.

SO ORDERED this 10th day of August, 2026.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge